UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MENNONITE CHURCH USA, *et al.,*<br><br>    Plaintiffs,<br><br>              v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*<br><br>    Defendants. | Civil Action No. 25-CV-00403-DLF |

**BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS**
***AMICUS CURAIE* IN SUPPORT OF DEFENDANTS AND IN**
**OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.


DATED: March 19, 2025                               Respectfully submitted,

/s/ Christopher J. Hajec
CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

## INTEREST OF *AMICUS CURIAE*

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).[1]

## INTRODUCTION

On January 21, 2025, Acting Secretary of Homeland Security Benjamin Huffman issued a memorandum titled "Enforcement Actions in or Near Protected Areas," which rescinded the October 27, 2021, memorandum "Guidelines for Enforcement Actions in or Near Protected Areas" issued by former Secretary Mayorkas. The Mayorkas memorandum directed Department of Homeland Security ("DHS") officials to refrain from enforcement activity in "protected areas"—an expansive category that included not only places of worship, primary schools, and hospitals, but also recreation centers, social services establishments, universities and trade schools, and "places where there is an ongoing parade, demonstration, or rally." Mayorkas, Memorandum on Guidelines for Enforcement Actions in or Near Protected Areas (Oct. 27, 2021) ("Mayorkas Memo"). The January 21, 2025, Huffman memorandum ended this policy, and instead directed officers to use their discretion in conducting enforcement activity at protected areas, while also

---

[1] No counsel for a party authored this brief in whole or in part and no person or entity, other than amicus curiae, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

1

recognizing that subordinate agencies could issue their own directives to "assist officers in exercising appropriate enforcement discretion." Huffman, Memorandum on Enforcement Actions in or Near Protected Areas (Jan. 21, 2025) ("Huffman Memo"). Plaintiffs have filed suit seeking injunctive relief on the basis of the Free Exercise Clause of the First Amendment and the Religious Freedom Restoration Act ("RFRA").

Plaintiffs' suit is without merit, and their claim for injunctive relief should be denied. Plaintiffs have failed to meet their burden of showing that it is Defendants' policy modification, rather than more vigorous immigration law enforcement generally, that will cause their alleged injury. Plaintiffs' own steps to aid illegal aliens in evading the law, such as heightening security, are not legally cognizable injuries, and Plaintiffs have not shown that illegal aliens will be deterred from going to their religious services because of Defendants' policy change in particular, rather than because of more vigorous enforcement generally. Thus, Plaintiffs have failed to meet their burden of showing either that Defendants' policy modification will burden their religious exercise, as required under both the Free Exercise Clause and RFRA, or that their injury is fairly traceable to that modification.

**I. Legal Standards for a preliminary injunction.**

A preliminary injunction is an extraordinary legal remedy that is only granted when the requesting party demonstrates a need for such relief. A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm without such preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The burden of proof rests with the movant, who must demonstrate a substantial likelihood of prevailing on the underlying claim, and that, absent the requested relief, the movant will suffer irreparable harm that is both imminent and not compensable through monetary

2

damages. *Id.* at 22. Failure to succeed on any of these factors is a basis for denying a preliminary injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Because Plaintiffs cannot meet their burden of demonstrating that Defendants have burdened their right to free exercise of their religious beliefs, they cannot succeed on the merits of their claims.

## II. Plaintiffs cannot satisfy the requirements for a preliminary injunction or a temporary restraining order

### A. *Plaintiffs cannot demonstrate that Defendant has substantially interfered with their right to exercise their religious beliefs under the First Amendment.*

To prevail in a claim under the Free Exercise Clause of the First Amendment, a party must first demonstrate that a government action either compels the party to act in a manner contrary to its sincerely held religious beliefs or otherwise significantly interferes with its religious practices. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 653 (2000). To meet this standard, the government action must significantly burden the plaintiff's ability to practice their religious beliefs. *See id.* at 653; *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618-19 (2021).

Plaintiffs cannot satisfy their burden, because DHS's policy does not compel Plaintiffs to alter their religious beliefs or practices, or otherwise significantly interfere with Plaintiffs' ability to worship. Plaintiffs argue that DHS's policy allowing enforcement activity at or near protected areas interferes with their religious rights by deterring attendance at worship, ministry, and other communal events. Plaintiffs' Brief in Support of Preliminary Injunction ("Pls.' Br.") at 22. Specifically, they allege two kinds of injury caused by DHS's policy change. First, they claim that the policy change "poses an imminent risk of injury through actual disruption to worship services or church activities." *Id*. at 22-23. Second, they claim that the threat of enforcement in protected areas will lead to a decline in attendance among congregants, which will "prevent Plaintiffs from engaging in communal worship with *all* members of their communities," including illegal aliens. *Id* at 23.

3

In support of the former claim, Plaintiffs do not cite any actual disruption to worship or church activities caused by DHS activities since the Huffman Memo was issued. The mere issuance of the memo is not enough to show such disruption, since the memo does not direct DHS to engage in any particular activities at protected areas, but merely grants agents greater discretion than that allowed by the Mayorkas Memo. Plaintiffs' reliance on *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 522 (9th Cir. 1989), is inapposite; in that case, immigration officials engaged in actual surveillance of churches, but no such surveillance is alleged here. *Id.* Plaintiffs have merely speculated that greater discretion will lead to interference with their religious exercise by DHS, including surveillance, but have provided no further basis for that claim of injury. Pls.' Br. at 19. *Public Citizen, Inc. v. National Highway Traffic Safety Administration*, 489 F.3d 1279, 1293-1294 (D.C. Cir. 2007) (holding that mere speculation is not enough to establish that plaintiffs are likely to succeed in showing imminent harm).

As for the latter claim of injury, Plaintiffs fail to establish causation between DHS's change in policy and the burden Plaintiffs allege they will suffer. Concurrently with that change of policy, DHS has announced, to much publicity, that it will enforce immigration laws much more aggressively than before, and Plaintiffs fail to show that this general increase in enforcement will not account for the asserted reduction in attendance at their services. After all, if an illegal alien congregant is detained by DHS at a public place or a traffic stop, and then deported, the same reduction of attendees will take place—there will be one less congregant at a given religious service or church activity. Also, if illegal aliens will indeed be deterred from attending Plaintiffs' religious services or activities, Plaintiffs have not shown that this will be caused by Defendants' policy modification, rather than, as seems more likely, more vigorous enforcement generally. Plaintiffs therefore cannot establish that DHS's modification of the protected areas policy, rather than its general policy of vigorous enforcement, will either interfere with their religious exercise

4

or, as required for standing, be a harm "fairly traceable" to the policy modification. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992).

In any event, even assuming that DHS has burdened Plaintiffs' exercise, a neutral, generally applicable law that burdens religion is subject only to rational basis review, unless it also infringes on another constitutional right or targets religion specifically. *Emp. Div. v. Smith*, 494 U.S. 872, 878 (1990). The Free Exercise Clause protects religious liberty but does not provide absolute immunity from generally applicable laws, particularly those enacted to promote public safety and welfare. *Id.* DHS's policy change is neutral and generally applicable. It facilitates the execution of DHS's statutory responsibility to enforce immigration laws, including the Homeland Security Act of 2002, 6 U.S.C. § 101 et seq., and the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., which are themselves neutral, generally applicable laws enacted to promote public safety and welfare. As noted previously, "protected areas," as defined in the Mayorkas Memo, comprise an extremely broad category of public places not limited to places of worship. Mayorkas Memo at 2. By allowing enforcement activity at all places within this broad category, DHS is applying its policy of encouraging officer discretion in a neutral manner. Only if Plaintiffs have a right to worship with illegal aliens, specifically, does DHS's policy change qualify as substantially interfering with their religious exercise. But such a right would effectively constitute a right to enjoin enforcement of the (generally applicable) immigration laws themselves.

B. *Plaintiffs cannot succeed under RFRA.*

Plaintiffs claim under the Religious Freedom Restoration Act ("RFRA") also fails. To support this claim, Plaintiffs argue that the DHS policy change burdens their expressive association by allowing enforcement action that would endanger the security, communal worship, and social services provided at Plaintiffs' churches and synagogues. Pls. Br. at 14. In particular, Plaintiffs blame DHS's policy change for forcing their congregations to take actions such as "heightening

5

security, locking doors, moving services online, and being less public about their immigrant-focused ministries." *Id.* But such measures to aid others in evading the law are not a cognizable injury. *Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (stating this circuit's consistent position that self-inflicted harm does not amount to a cognizable injury); *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) (holding that a generally applicable prohibition did not force plaintiffs to engage in conduct forbidden by their religion or prevent them from engaging in conduct required by their religion).

Nor can Plaintiffs establish that the DHS policy change provides a basis to fear attending religious community activities among U.S.-citizen and lawful-immigrant congregants. An individual's subjective fears of encountering DHS do not mean that DHS, by enforcing its statutory obligations, is somehow deterring that individual from attending a religious service. DHS cannot be held responsible for the subjective fears of persons whom the agency does not seek to detain. Plaintiffs cite one incident in which a Milwaukee family was detained by immigration officers after speaking Spanish at a shopping mall, and later released after the detention had been determined accidental. Complaint at 36. But this accidental arrest's occurrence at a shopping mall, rather than either a place of worship or any other area deemed "protected" in the Mayorkas Memo, shows that it did not follow from the policy change. In any event, if the possibility of accidental arrests could be a basis for imminent harm, it could be used to show such harm in challenges to all immigration laws, and indeed all criminal laws.

With respect to illegal aliens, Plaintiffs cannot show that their predicted absence from services will be caused by DHS's modification of the protected areas policy rather than more vigorous enforcement generally. They thus cannot show that this modification burdens their religious exercise. And, of course, vigorous immigration law enforcement generally, including perfectly effective enforcement, could not be challenged under RFRA, because it would be the

6

least restrictive means of serving the compelling governmental interest in achieving operational control of the border, defined by Congress as "the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." Secure Fence Act of 2006, Pub. L. No. 109-367, 120 Stat. 2638.; 42 U.S.C. § 2000bb-1(a), (b).

Indeed, if illegal aliens will be deterred from attending Plaintiffs' religious services or activities, it is more likely to be because the Trump Administration's general, highly-publicized ramping-up of enforcement will make them hesitate to go out in public unnecessarily, whether to church or a shopping mall, than because an obscure agency memo about the level of enforcement in a wide range of "protected areas" has been modified. Because Plaintiffs have made no effort to show the contrary—or even that any illegal aliens likely to attend their services even *know* about Defendants' policy modification—they have shown neither that the modification burdens their religious exercise nor that their injury is "fairly traceable" to the modification. *Lujan*, 504 U.S. at 560-61.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied.

Dated: March 19, 2025                        Respectfully submitted,

                                              s/ Christopher J. Hajec
                                              CHRISTOPHER J. HAJEC
                                              D.C. Bar No. 492551
                                              Immigration Reform Law Institute
                                              25 Massachusetts Ave., NW, Suite 335
                                              Washington, DC 20001
                                              (202) 232-5590
                                              chajec@irli.org
                                              Counsel for *Amicus Curiae*
                                              Immigration Reform Law Institute